**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JANE ROE, | Case No. 2:17-cv-00945-EAS-CMV |
| Plaintiff, | JUDGE:  SARGUS |
| v. | OPPOSITION TO MOTION FOR RECONSIDERATION |
| JAVAUNE ADAMS-GASTON, ET AL. | |
| Defendants | |

Plaintiff Jane Roe respectfully submits this Opposition to Defendants' Motion for Reconsideration ("Def. Memo.").  The Court's decision was correct and consistent with the decisions of this Court, the Sixth Circuit Court of Appeals, and the United States Supreme Court.

**A.      Defendants Do Not Challenge The Court's Conclusions On Three Of The Four Preliminary Injunction Factors**

In considering the Motion for a Preliminary Injunction, the court considered all four of the elements set forth by the Sixth Circuit. *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014); *Ohio State Conf. of the NAACP v. Husted*, 768 F.3d 524, 532-533 (6th Cir. 2014). The Court found that all four factors favored the granting of a preliminary injunction.

Defendants challenge the Court's decision only in respect to one of the four factors, likelihood of success on the merits.  This is significant because the four elements must be balanced; no single factor is determinative.  *See 111 Debt Acquisition LLC v. Six Ventures, Ltd.*, S.D.Ohio No. 2:08-cv-768, 2008 U.S. Dist. LEXIS 85431, at *8 (Aug. 15, 2008) ("These four considerations are not required elements of a conjunctive test but are rather factors to be balanced."), *citing Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).  As a result, even if Defendants were correct (and they are

not), the Court could still have granted the Motion for a Preliminary Injunction after balancing *all four* factors.

**B.    Defendants Incorrectly State There Is No "Historical" Due Process Right To Cross Examination In Student Disciplinary Proceedings**

Defendants incorrectly understate the obligation of OSU to provide Plaintiff due process in school disciplinary hearings.[1]  Defendants suggest that Plaintiff can only show a substantial likelihood of success if Plaintiff demonstrates "lack of notice and a hearing."  Def. Memo. at 3, *citing Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994).  The question was not whether the Plaintiff had some form of notice[2] and an opportunity to be heard; she did.  But this is only the start of the analysis.  Instead the question is whether that opportunity to be heard was "meaningful," or as Justice Powell explained, "fair." *Vitek v. Jones*, 445 U.S. 480, 500, 100 S. Ct. 1254 (1980) (Powell, J., concurring in part) ("The essence of procedural due process is a fair hearing.").  *See Doe v. Cummins,* 662 F.App'x 437 (6th Cir. 2016) (a student facing suspension is entitled to "the opportunity to be 'heard at a meaningful time and in a meaningful manner.'"), *quoting Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *Doe v. Rector & Visitors of George Mason Univ.*, E.D.Va. No. 1:15-cv-209, 2016 U.S. Dist. LEXIS 24847, at *46-47 (Feb. 25, 2016) ("it may well be that plaintiff deserves to be expelled or otherwise sanctioned for certain behavior, but the Constitution requires that if behavior is to be sanctioned, then the state must ensure the soundness of the decision it reaches as the situation requires.").

---

[1] Defendants quote the Sixth Circuit in *Flaim* to observe, correctly, "A University is not a court of law."  Def. Memo. at *4, quoting Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005).  However, the Sixth Circuit, in that same case, noted that the observation that school disciplinary hearings "are not criminal trials, and therefore need not take on many of those formalities" was a "generalized, *though unhelpful* observation."  *Id.* (emphasis supplied).

[2] Plaintiff has asserted in the Amended Complaint a claim that Plaintiff did not receive adequate notice. (Am. Comp. ¶¶ 52, 78, 110(a).) This claim is consistent with *Nokes v. Miami Univ.*, S.D.Ohio No. 1:17-cv-482, 2017 U.S. Dist. LEXIS 136880, at *33 (Aug. 25, 2017) (granting preliminary injunction on claim that school failed to provide adequate notice of nature of misconduct).

Defendants' argument is premised on a board claim about the current state of the law:

> A review of the relevant case law shows that Courts have traditionally held that there is no due process right of accused students in a school disciplinary process to cross-examine either their accusers or adverse witnesses.

Def. Memo. at 4.[3]  This is 180° wrong.  Precedent from the U.S. Supreme Court, the Sixth Circuit, other Circuit Courts of Appeals, and this Court clearly establish the outlines of this right:  in college and university disciplinary hearings, the Due Process guarantee of the Constitution requires that there is a right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts?

---

[3] Defendants cite two Sixth Circuit decisions to support this claim.  *Newsome v. Batavia Local School Dist.*, 842 F.2d 920 (6th Cir. 1988); *C.Y. v. Lakeview Pub. Schs*, 557 F.App'x 426 (6th Cir. 2014).

*Newsome* was decided 17 years before *Flaim, infra.,* and was cited by the Sixth Circuit in *Univ. of Cincinnati*, *infra.*, five times.  As a result, to the extent there is any inconsistency with *Newsome*, on the one hand, and *Flaim* and *Univ. of Cincinnati*, on the other hand, *Univ. of Cincinnati* represents the current statement of the law. *Newsome* also presented a number of unique facts not present in this case that tipped the *Mathews* balancing test in that case against cross-examination. In *Newsome*, but unlike in this case, the Sixth Circuit believed that the credibility of the witnesses was "initially assessed by a school administrator -- in this case, the school principal -- who has, or has available to him, a particularized knowledge of the student's trustworthiness." 842 F.2d at 924. In addition, in *Newsome*, but unlike in this case, the school had an interest in "protecting student witnesses from ostracism and reprisal." 842 F.2d at 925. *See Rippy v. Bd. of Sch. Trs.*, S.D.Ind. Cause No. IP 99-1508-C H/G, 2000 U.S. Dist. LEXIS 7427, at *12 (Feb. 4, 2000) (observing that *Newsome* involved a specific fact pattern related to drug usage and "stop[ped] short," however, of establishing general propositions for student hearings).

*C.Y.* does not discuss the cross-examination issue in detail, most likely because the student had admitted to a violation of school rules and, as a result, like in *Flaim*, the fact-finder was not required to make a credibility determination. 557 F.App'x at 428 (noting that student admitted to sending a threatening tweet and that she threatened another student during conversations with other students).

Moreover, *Newsome* and *C.Y.* involved high school students. This Court, in the original decision in *Univ. of Cincinnati*, correctly recognized that the relationship between administrators and students, which was key to the *Newsome* decision, is different in high school and college, and that, as a result, different standards govern the constitutional rights of high school and college students.

> In a university setting, the administrators do not have the same "particularized knowledge" of a student's trustworthiness that exists in a high school with a smaller student population. Therefore, the value of cross-examination is not "somewhat muted" based on the school administrator's firsthand knowledge of the students involved.

*Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704, 711 (S.D.Ohio 2016).

- In *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970), the Supreme Court said, "in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."  397 U.S. at 269-270.

- In *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972), the Second Circuit said, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550.

- In *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005), the Sixth Circuit, relying on *Winnick*, said that when there is "a choice between believing an accuser and an accused, . . . cross-examination is not only beneficial, but essential to due process."  418 F.3d at 641.

- In *Doe v. Cummins*, , 662 F. App'x 437 (6th Cir. 2016), the Sixth Circuit, relying on *Winnick* and *Flaim*, said, "due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where . . . credibility is at issue." 662 F. App'x at 448.

- In *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645 (S.D. Ohio 2016), this Court, relying on *Flaim*, held, "The right to some form of cross-examination in university expulsion hearings is a clearly established due process right when . . . a case that turns on 'a choice between believing an accuser and an accused.'"  219 F. Supp. 3d at 663, *quoting Flaim*. In a later decision in the same case, this Court observed that in certain situations a school may be required to provide an accused student with credibility impeachment evidence "as part of his right to cross-examination." *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2018 U.S. Dist. LEXIS 68364, at *28 (Apr. 24, 2018).

- In *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), the Sixth Circuit, relying on *Flaim*,, said, "Accused students must have the right to cross-examine adverse witnesses 'in the most serious of cases.'"  872 F.3d at 401.

- In *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018), the Sixth Circuit, relying on *Univ. of Cincinnati*, said cross examination was required "if the credibility of an alleged victim is at issue" as a "way for the adjudicative body to evaluate the victim's credibility." 882 F.3d at 600, *quoting Univ. of Cincinnati*.

- In *Gischel v. Univ. of Cincinnati*, S.D.Ohio No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 18083 (Feb. 5, 2018), this Court, relying on *Univ. of Cincinnati*, said, "The Sixth Circuit has recognized at least a limited right to cross-examine adverse witnesses 'in the most serious of cases.'"  2018 U.S. Dist. LEXIS 18083, at *36, *quoting Univ. of Cincinnati*.

These decisions recognize a well established legal principle:  the Due Process guarantees of the

Constitution include a right to confront adverse witnesses when the information supplied by those

4

witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts.[4]

**C.      Defendants Improperly Attempt To Limit The Holding Of *Univ. of Cincinnati***

Defendants suggest that this Court failed to recognize the narrow nature of the Sixth Circuit's decision in *Univ. of Cincinnati*. Defendant argue that *Univ. of Cincinnati* establishes only that "the *accusing* student must be subject to 'some form' of cross examination." Def. Memo. at 8 (emphasis in original).

Nothing in the court's decision in *Univ. of Cincinnati* supports the conclusion that the right to cross-examination is limited to accusers. On *three* occasions, the Sixth Circuit explained that the right

---

[4] The other cases cited by Defendants all concerned junior high school or high school students and, as a result, are distinguishable on this basis. *See e.g. Caston v. Benton Pub. Schools,* E.D.Ark. 4:00CV00215WKU, 2002 U.S. Dist. LEXIS 11299 (Apr. 11, 2002)  (student attended Benton Junior High School); *L.Q.A. v. Eberhart*, 920 F.Supp. 1208 (M.D.Ala.1996) (student at Georgia Washington Junior High School); *Dornes by & Through Lopez v. Lindsey*, 18 F.Supp.2d 1086, 1087 (C.D.Cal.1998) (student at Etiwanda Middle School).

In many of the cases cited by Defendants, not only were the students in high school, but – significantly – there was not a question of credibility because the students had admitted to the misconduct. *See Brewer v. Austin Indep. School Dist.*, 779 F.2d 260 (5th Cir.1985) (sixteen-year-old student at David Crockett High School admitted to possession of drugs); *McClain v. Lafayette Cty. Bd. of Edn.*, 673 F.2d 106 (5th Cir.1982) (student at Lafayette County High School admitted he possessed a knife at school); *Sandusky v. Smith*, W.D.Ky. No. 3:10-CV-00246-H, 2012 U.S. Dist. LEXIS 1422251 (Oct. 2, 2012) (student at Marion County High School admitted to having alcohol on school trip); *Johnson v. Humble Indep. School Dist.*, 799 F.Supp. 43 (S.D.Tex.1992) (student at Humble High School admitted to striking a coach).

Other decisions cited by Defendants not only involve high or junior high students schools, but arose in the difficult and unique context of desegregation efforts in the 1970s. *See Graham v. Knutzen*, 351 F.Supp. 642 (D.Neb.1972) (case concerning multiple students in Omaha public schools); *Tasby v. Estes*, 643 F.2d 1103 (5th Cir.1981) (case concerning disciplinary procedures following desegregation of Dallas Independent School District); *Boykins v. Fairfield Bd. of Edn.*, 492 F.2d 697 (5th Cir.1974) (case concerning disciplinary procedures following desegregation of Fairfield, Alabama schools).

Finally, at least one case relied upon by Defendants actually turns out to support Plaintiff. *Dillon v. Pulaski Cty. Special School Dist.*, 468 F.Supp. 54 (E.D.Ark. 1978). In *Dillon*, a student at North Pulaski High School was suspended after he was observed by a teacher kissing a girl. The teacher testified at a hearing but the student was not permitted to ask the teacher any questions. The court concluded, "due process clearly demanded that the plaintiff should have been given an opportunity to question her before the school board at its disciplinary hearing concerning the details of his alleged misconduct." 468 F.Supp. at 58.

of confrontation applies to "*adverse witnesses*," not merely the accuser. 872 F.3d at 401 ("Accused students must have the right to cross-examine *adverse witnesses* 'in the most serious of cases.'" (emphasis supplied)), *quoting Flaim,* 418 F.3d at 636; 872 F.3d at 404-405 ("Sparing the ARC panel from having to navigate traditional cross-examination justifies the requirement for written preapproved questions, but it does not justify denying the opportunity to question an *adverse witness* altogether." (emphasis supplied).); 872 F.3d at 406 ("Although hearsay and credibility disputes often go hand in hand, use of hearsay does not itself trigger the right to question an *adverse witness*." (emphasis supplied)).

Another recent decision by this Court found that the failure of a school to permit the cross-examination of a witness who supplied information that provided the reason for an adverse disciplinary violated the due process rights of an accused student. In *Gischel*, this Court (Dlott, J.) considered a motion to dismiss a complaint brought by a student accused of sexual misconduct. This Court, citing to *Univ. of Cincinnati*, found that the due process rights of an accused student could be violated when the hearing panel refused to ask the alleged victim a number of questions aimed at demonstrating that the alleged victim gave inconsistent or inaccurate statements. This Court *also* found that the due process rights of the accused student could be violated when the student was denied the opportunity to cross-examine a detective who had interviewed the alleged victim and obtained many of the witness statements relied upon by the hearing panel because the detective failed to appear at the hearing. *Gischel,* 2018 U.S. Dist. LEXIS 18083, at *37-38.

This Court's decision is also consistent with a recent decision of a district court in Michigan to issue an injunction against the University of Michigan's procedure for adjudicating claims of sexual misconduct. In the Michigan case, as in this case, the school used an investigator to obtain statements from adverse witnesses and claimed that students could engage in some form of questioning through the investigator. Unlike OSU, Michigan did not permit *any* live testimony, but the result was the same: an accused student had no ability to cross-examine adverse witnesses. The court concluded that the

6

accused student had a substantial likelihood of success on the merits of a due process claim. The

court, relying on *Univ. of Cincinnati*, said:

> [T] his Policy deprives Plaintiff of a live hearing and the opportunity to face his accuser.
> Because of the University's method of private questioning through the investigator,
> Plaintiff has no way of knowing which questions are actually being asked of Claimant
> or her response to those questions. Without a live proceeding, the risk of an erroneous
> deprivation of Plaintiff's interest in his reputation, education, and employment is
> significant. Additional procedural safeguards would both assist the truth-seeking
> process and help to ensure the protection of Plaintiff's constitutional rights.

*Doe v. Univ. of Michigan*, E.D. Mich. No. 2:18-cv-11776-AJT-EAS, ECF No. 30 (July 6, 2018) (pursuant

to Local Rule 7.2(b)(4), available upon request by the Court or opposing counsel).

Defendants' other efforts to distinguish *Doe v. Univ. of Cincinnati* fail.[5]

Defendants first suggest that because Plaintiff supposedly did not specifically recall the events

that led to her discipline, there was no issue of credibility. Def. Memo. at 9. This description of

Plaintiff's testimony at the disciplinary hearing is not accurate. Plaintiff specifically denied engaging in

any misconduct. (Hrg. Tr. at 10; PageID#160.). She did not testify that she did not remember

anything; she testified that she did not remember engaging in the misconduct described by the alleged

victim:

---

[5] Defendants suggest that *Univ. of Cincinnati* does not prevent a school from using hearsay evidence in
proceedings. Def. Memo. at 8. This is correct, but also a separate issue from confrontation. Allowing
a school to impose discipline based exclusively on hearsay, without providing any opportunity for a
student to cross-examine the person who provides the adverse information, would allow a school to
eviscerate the holding of *Goldberg* that when important governmental decisions are based on
determinations of fact, due process usually requires an opportunity to confront and cross-examine
adverse witnesses. 397 U.S. 254 at 269. Courts have found due process violations when an
administrative hearing relies exclusively on hearsay to prove wrongdoing without providing any
opportunity or mechanism to question the declarant. *Ortiz v. Eichler*, 616 F.Supp. 1066, 1068 (D.Del.
1985) (an administrative hearing could admit hearsay as long as the party could compel the attendance
of the witnesses "because claimants would then have the power to compel confrontation with, and
cross-examination of, hearsay declarants"); *Basco v. Machin*, 514 F.3d 1177, 1183 (11th Cir. 2008)
(administrative decision relying solely on hearsay could violate due process guarantees when parties
could not subpoena the declarants); *Edgecomb v. Hous. Auth.*, 824 F.Supp. 312, 315-16 (D.Conn.1993)
("Denying [plaintiff] the opportunity to confront and cross-examine persons who supplied
information upon which the [agency's] action is grounded is improper.").

> I legitimately do not remember anything – anything that's in the packet [the alleged victim] describes. . . .
>
> If I – if I knew I had done this, I would have – I would have asked for much deeper forgiveness.  I would have – I would have admitted to it.  I would have taken responsibility at, you know, this hearing. . . . I don't understand how I could have such vivid memories about what I did to [a witness] and nothing about anything I did – anything I did to [the alleged victim].

(Hrg. Tr. at 58-59, PageID#208-209.)  Moreover, as this Court observed in its decision, the hearing officer acknowledged having to "choose between believing [Plaintiff] and believing her accusers." April 17, 2018 Entry at 17 (PageID#1075).  The hearing officer specifically concluded that that "statements made by [Plaintiff] . . . were not plausible or credible" but that the "accounts of [the alleged victim] and the witnesses presented a consistent and credible account." (May 3, 2017 Letter, PageID#725.)

Defendants next suggest that there is no constitutional violation because Plaintiff could have cross-examined the alleged victim on her written statement.[6]  Def. Memo. at 9-10.  Defendants, in a related argument, suggest, correctly, that "nothing in the *Univ. of Cincinnati* case suggests that every single witness who testimony is considered at a student disciplinary hearing must appear in person and be subjected to cross-examination."  Def. Memo. at 10.   Plaintiff does not dispute that Plaintiff had the opportunity to cross-examine the alleged victim.  That is not the constitutional violation.  Rather,

---

[6] Defendants observe that OSU does not have subpoena power.  Def. Memo. at 12.  This is true, but of no moment.  OSU can certainly enact rules requiring student and faculty to cooperate with investigations and appear for hearings.  The further suggestion that appearing would impose an undue burden because witnesses would have to "miss class, work, or other personal matters" is speculative and may not be an accurate depiction of the undergraduate experience or lifestyle, anyway (at least in the experience of counsel).  Def. Memo. at 12.

Moreover, this slight burden does not outweigh the recognized interest of accused students in their education. *Univ. of Cincinnati*, 872 F.3d 393 at *29 (a suspended student would "suffer reputational harm both on and off campus based on a finding rendered after an unfair hearing"; *Elmore v. Bellarmine Univ.*, W.D.Ky. No. 3:18CV-00053-JHM, 2018 U.S. Dist. LEXIS 52564, at *20 (Mar. 28, 2018) (disciplinary sanctions "would damage [student's] academic and professional reputations and may affect his ability to enroll at other institutions of higher education or medical school and to pursue a career"), *citing Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016).

as explained *supra*, the Due Process guarantees of the Constitution includes a right to confront adverse witnesses when two factors are present: (i) the information supplied by those witnesses is the reason for the adverse actions; and (ii) there is a question of credibility to be resolved by the finder of facts. Both factors were present in this case, as the hearing officers relied on statements from witnesses who did not appear at the hearing to decide an issue of credibility.  Plaintiff is not claiming, as Defendants suggest, that the Due Process Clause requires the ability to cross examine "any witness."  Def. Memo. at 8.  *See also* Def. Memo. at 11-12 (suggesting that Court's decision would require :every witness, no matter how minor . . . to appear and testify in person).  Plaintiff is claiming, and believe the more accurate description of the law, is as follows: the due process clause requires the ability to cross-examine adverse witness who the finder of fact relies upon to resolve an issue of credibility.  *See*, *generally*, *Univ. of Cincinnati*, *supra.*

## CONCLUSION

The Motion for Reconsideration should be denied.


Respectfully submitted,


_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this 12th day of July upon all counsel of record.

      /s/ Joshua Adam Engel

Joshua Adam Engel (0075769)